IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRUSTEES OF THE IRON WORKERS LOCAL UNION NO. 5, *et al.*, | * * * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 8:24-cv-02089-PX |
| MIRACLE STEEL, INC. | * * | |
| Defendant. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending in this employee benefit case is Plaintiffs' motion for default judgment, brought by the Trustees (the "Trustees") against Defendant Miracle Steel, Inc. ("Miracle Steel"). ECF No. 16. Miracle Steel failed to make contributions for several employee benefit plans (the "Funds")[1] associated with Iron Workers Local Union No. 5 and organized under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The Trustees properly served Miracle Steel who has not answered or otherwise responded to the Complaint. Finding no hearing necessary, *see* D. Md. Loc. R. 105.6, the Court GRANTS Plaintiffs' motion.

**I.   Background**

Miracle Steel employees and members of Local Union No. 5 are entitled to certain benefits derived from the Funds created and governed by the collective bargaining agreement (the "CBA") between the employer and union. ECF No. 1 ¶ 1. The CBA and the attendant administration of the Funds is subject to the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 152(5) and

---

[1] These Funds are: (1) the Iron Workers Local Union No. 5 and Iron Workers Employers Association and Employees' Pension Trust ("Local 5 Pension Fund"), the Iron Workers Trust Fund Local No. 5 ("Local 5 Health Fund"), the Iron Workers Local Union 16 Pension Fund ("Local 16 Pension Fund"), and the Washington, D.C. and Iron Workers Apprenticeship Training Trust Fund ("Apprenticeship Fund"); (2) the Mid-Atlantic States District Council Participating Locals' Annuity Fund ("Annuity Fund"); and (3) the Iron Workers Industry Advancement Program of Washington, D.C. and the Iron Worker-Management Progressive Action Cooperative Fund (together, the "Industry Funds").

ERISA, 29 U.S.C. § 1002(3). Under the CBA, Miracle Steel must pay monthly contributions to the Funds for each hour of covered work performed by its employees and detail the contributions in monthly submitted remittance reports. *Id.* ¶¶ 11 & 14–16. The CBA also permits the Trustees to inspect, if necessary, payroll records to verify the correct contributions owed. *Id.* ¶¶ 12 & 32.

Since 2021, Miracle Steel's contributions have been delinquent, incomplete or nonexistent. Miracle Steel more particularly failed to pay required contributions for the work performed between September and December 2021; March through May 2022; and July 2022 through March 2023. *Id.* ¶¶ 19–21; ECF No. 16-10 ¶¶ 14–15. The Trustees had attempted to reach repayment agreements with Miracle Steel, but substantial amounts remained unpaid. Accordingly, the Trustees filed suit on July 8, 2024, seeking unpaid contributions, interest and other related monetary damages under ERISA (Count I) and to compel an audit (Count II). ECF No. 1. Despite proper service, Miracle Steel never responded or otherwise answered the Complaint. ECF No. 6. The Clerk of the Court entered default on November 19, 2024, and the Trustees now move for default judgment under Rule 55(b) of the Federal Rules of Civil Procedure. ECF Nos. 12 & 16.

II. **Standard of Review**

Federal Rule of Civil Procedure 55 governs default judgments "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). Although courts maintain "a strong policy that cases be decided on the merits," *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment is appropriate when the "adversary process has been halted because of an essentially unresponsive party," *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). In deciding whether to grant default

judgment, the Court takes as true the well-pleaded factual allegations of the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). Accordingly, where a complaint avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," the Court will not enter default judgment. *Russell v. Railey*, No. DKC 08-2468, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012); *see, e.g.*, *Balt. Line Handling Co.*, 771 F. Supp. 2d at 545 ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

If the Complaint avers sufficient facts from which the court may find liability, the Court next turns to damages. *See Ryan*, 253 F.3d at 780–81. Damages are circumscribed by that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The damages request must be supported by evidence introduced either at a hearing or by affidavit or other records. *See id.*; *see also Lawbaugh*, 359 F. Supp. 2d at 422. Here, Plaintiffs have submitted detailed declarations and exhibits substantiating their damages. The Court finds these materials sufficient to decide the motion on the papers.

**III.     Analysis**

**A.     Liability**

ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained

3

agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685 (D. Md. 2013). ERISA also authorizes plan fiduciaries such as the Trustees to enforce an employer's contribution obligations under the plan or CBA. 29 U.S.C. §§ 1132(a)(3), 1132(g). ERISA thus "provide[s] trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions." *Int'l Painters & Allied Trades Indus. Pension Fund*, 919 F. Supp. 2d at 685–86 (quoting *Laborers Health & Welfare Trust Fund for Northern Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988)). *See also Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997) ("a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents.").

When viewing the Complaint facts as true and most favorably to the nonmovant, Miracle Steel failed to pay contributions into the Funds per the CBA and related agreements. *See* ECF No. 1 ¶¶ 10–13 (describing Miracle Steel's contribution obligations under the CBA and the Trust Agreements); *see also* ¶¶ 17–21 (detailing failure to remit payments and submission of incomplete reports); *see generally* ECF No. 1 ¶¶ 4, 6–10. The Court easily concludes that Miracle Steel's failure to pay violates ERISA § 515 and LMRA § 301. *See Ralph's Grocery Co.*, 118 F.3d at 1021 ("In a collection action based on Section 515, a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents."). The Court thus grants default judgment in favor of the Trustees on Count I.

The Trustees also are entitled to relief on Count II. ERISA permits Trustees to seek injunctive relief necessary to enforce compliance with plan terms. *See* 29 U.S.C. § 1132(a)(3)(B)

(permitting civil actions for appropriate equitable relief to enforce plan terms). This includes demanding a payroll audit to ascertain all unpaid contributions. *Trs. of Nat'l Elec. Benefit Fund v. AC-DC Elec., Inc.*, No. DKC-11-0893, 2011 WL 6153022, at *3–4 (D. Md. Dec. 9, 2011) (granting default judgment and ordering defendant to submit to a payroll audit). The CBA and incorporated agreements make clear that Trustees may demand an audit of Miracle Steel's payroll records at the defendant's expense when outstanding amounts are owed. ECF No. 1 ¶ 32; ECF No. 16-10. Given Miracle Steel's chronic non-payment, the Court concludes an audit of payroll records from June 1, 2021, to the present is necessary to calculate the total contributions owed. Judgment as to Count II is granted.

The Court next turns to damages.

### B.     Damages

The Funds are entitled to receive from Miracle Steel unpaid contributions plus interest, as well as reasonable attorneys' fees and costs as set forth in the CBA and related agreements. *See* ERISA § 1145, ECF No. 1 ¶¶ 25–29; ECF No. 16-10 ¶¶ 12–13 & 19; ECF No. 16-2 ¶¶ 8–9 &13. Trustees have demonstrated by preponderant evidence damages as follows.

Miracle Steel owes unpaid contributions between September through December 2021, March 2022 through May 2022, and July 2022 through March 2023 totaling $191,393.76. ECF No. 16-10 ¶ 15; ECF No. 16-2 ¶ 11. This figure is likely to grow once the audit is performed to account for those unpaid contributions for June 2022 and from March 2023 to the present. At this juncture, the Trustees have demonstrated entitlement to recover $191,393.76 in unpaid contributions, *see* 29 U.S.C. § 1132(g)(2)(A), plus prejudgment interest "calculated using the rate provided under the plan." 29 U.S.C. § 1132(g)(2)(B). The agreements governing the Funds set the prejudgment interest at a 12% per annum interest rate on late contributions to all Funds save

5

for the "IMPACT Industry Fund," which is 18% per annum. ECF No. 1 ¶¶ 25–27; ECF No. 16-10 ¶ 13; ECF No. 16-2 ¶ 9. The CBA similarly provides for interest at those rates on all overdue contributions. For the purposes of seeking default judgment, Plaintiffs have calculated interest on unpaid contributions through December 31, 2024 at the rate of 12% per annum for all Funds. ECF No. 16-10 ¶¶ 13, 17; ECF No. 16-2 ¶ 12. The Court has verified the calculations and thus will award an additional $50,594.98 in prejudgment interest.

The agreements incorporated into the CBA also provide for liquidated damages of 10% of unpaid contributions for all Funds save the Annuity Fund which is 20%. ECF No. 1 ¶¶ 25 & 27; ECF No. 16-10 ¶ 12; ECF No. 16-2 ¶ 8. These rates are within the 20% cap set by ERISA. Accordingly, Miracle Steel owes $36,182.77 in liquidated damages to the Local 5 Funds, Industry Funds, and Local 5 (10% of the contributions owed to those funds) and $15,192.55 to the Annuity Fund (20% of that delinquency), for a total of $51,375.32 in liquidated damages. ECF No. 16-10 ¶ 16; ECF No. 16-2 ¶ 12. The Court will award the full $51,375.32 in liquidated damages, as required under ERISA. *See* 29 U.S.C. § 1132(g)(2)(C).

Last, Trustees are entitled to reasonable attorneys' fees and costs. *See* 29 U.S.C. § 1132(g)(2)(D). *See also* ECF No. 1 ¶ 29; ECF No. 16-10 ¶ 19; ECF No. 16-2 ¶ 13. Plaintiffs' counsel has submitted a fee declaration (ECF No. 16-16) in compliance with Local Rule 109.2 and Appendix B of this Court's Local Rules. Counsel's declaration itemizes the work performed, hours expended, billing rate, and litigation costs. Counsel, an attorney with over a decade of experience, billed 29.0 hours on this matter at a rate of $285.00 per hour. ECF No. 16-16 ¶¶ 4–7. This hourly rate falls within the guidelines for an attorney of her experience level in this District *see* Loc. R. App. B (D. Md.) (suggesting $225–$350 per hour for attorneys with 9–14 years' experience), and the time expended is reasonable given the tasks involved. The lodestar attorney

fee comes to $8,235.00. In addition, Plaintiffs incurred $555.00 in costs, consisting of the court filing fee ($405) and process server fee ($150). ECF No. 16-16 ¶ 9. These expenses are adequately documented and are typical out-of-pocket costs that are recoverable. The Court finds this amount reasonable and will award $8,790.00 in attorneys' fees and costs.

**IV.    Conclusion**

Default judgment is proper as to Miracle Steel and Trustees have submitted sufficient supporting their claim for $302,154.06, consisting of unpaid contributions, interest, liquidated damages, and attorneys' fees and costs, as calculated under ERISA and the governing agreements. The Court will award the full requested amount. The Court will also grant Trustees' request for audit for the period June 1, 2021 through the present to ensure that any additional amounts owed to the employee benefit plans are uncovered and can be collected. A separate Order follows.

July 24, 2025  
Date

/s/  
Paula Xinis  
United States District Judge